UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO. 05-10959-RCL

DONALD M. SCHWARZ,

    Plaintiff

v.

SERGEANT ROBERT LINCOLN,
Individually; TOWN OF BRIDGEWATER,
PLYMOUTH COUNTY,
MASSACHUSETTS,

    Defendants

MEMORANDUM IN SUPPORT OF
DEFENDANT TOWN OF
BRIDGEWATER'S MOTION
FOR SUMMARY JUDGMENT

I.    INTRODUCTION

This action arises from an encounter between pro se plaintiff Donald M. Schwarz ("Schwarz") and Robert Lincoln ("Lincoln"), a police officer for the Town of Bridgewater ("Town"), that occurred while plaintiff solicited signatures on property located at 169 Broad Street in the Town (the "Property"). Complaint, ¶¶4, 11-26. The Property is owned by a private party and leased to the U.S. Postal Service.

The Complaint asserts violation of unspecified provisions of the U.S. Constitution, various provisions of the Massachusetts Constitution, and various state statutes, as well as claims for negligence pursuant to the Massachusetts Tort Claims Act, G.L. c.258. Complaint, Introduction, ¶¶28-39. In sum, plaintiff asserts that Lincoln violated his statutory and constitutional rights by ordering plaintiff to leave the Property, and that the Town is liable for Lincoln's actions, based on theories of vicarious negligence and negligent hiring, training, and supervision.

Plaintiff, however, has failed to serve Lincoln with the Complaint, leaving the Town as the only defendant in this matter.[1]  The Town moves for summary judgment on the grounds that Lincoln, as a matter of law, acted lawfully when he ordered plaintiff to leave the Property, and thus the Town may not be held liable to plaintiff under any theory.  The within Memorandum is submitted in support of the Town's motion.

II.     STATEMENT OF FACTS

The relevant facts underlying this case are set forth in the Defendant Town of Bridgewater's Local Rule 56.1 Statement of Material Facts of Record, filed herewith.

III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  Summary judgment should be entered where the non-moving party has the burden of proof and, based on the record before the Court, "fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1987).  The moving party may prevail on summary judgment either by submitting affirmative evidence negating an element of the nonmovant's claim, or demonstrating that the nonmovant has no reasonable expectation of proving an element of the claim due to insufficient evidence. Fireman's Fund Ins. Co. v. Harley Realty Co., 24 F.Supp.2d 117, 118 (D.Mass. 1998, Keeton, J.).

---

[1] Lincoln has filed a separate Motion to Dismiss based upon plaintiff's failure to serve the Complaint upon him.  See Fed.R.Civ.P. 4(m).

IV.     ARGUMENT

     A.     Lincoln Acted Lawfully When He Ordered Plaintiff to Leave the Property, As Plaintiff Was Admittedly Violating Federal Law and Trespassing

As explained in detail below, the plaintiff was both violating federal law and trespassing when Lincoln ordered him to leave the Property. Thus, Lincoln's conduct was lawful, and the plaintiff cannot establish liability against the Town based on said conduct, under any theory.

Although plaintiff alleges that, on April 20, 2002, he was soliciting signatures while "standing on the public sidewalk adjacent to … the United States Postal facility" at 169 Broad Street, Complaint, ¶4, the undisputed facts prove this to be untrue. In fact, pictures of the Property and affidavits from Town officials familiar with the Property show that, contrary to plaintiff's contention, there is no sidewalk adjacent to the Property. Statement, ¶5. Instead, the Property directly abuts Broad Street, which is part of State Highway Route 18. Id. As such, the undisputed evidence proves that plaintiff was not standing on a public sidewalk as he solicited signatures; rather, the plaintiff was soliciting on the Property itself. Statement, ¶¶5-6.

The evidence further demonstrates that the Property is owned by a private company, and controlled by the U.S. Postal Service pursuant to a lease agreement. Statement, ¶¶2-3. Pursuant to Federal Regulation 39 CFR 232.1(h)(1), "[s]oliciting alms and contributions, campaigning for election to any public office … soliciting signatures on petitions, polls, or surveys … are prohibited" on postal property (emphasis supplied).[2] This regulation "applies to all real property under the charge and control of the Postal Service," and thus applies to property that, like the Property here, is leased by the Postal Service. See 39 CFR 232.1(a).

The U.S. Supreme Court has rejected a constitutional challenge to 39 CFR 232.1(h)(1). See U.S. v. Kokinda, 497 U.S. 720, 733 (1990) (affirming conviction for soliciting on a sidewalk

---

[2] A copy of Regulation 39 CFR 232.1 is attached hereto for the Court's convenience.

adjacent to postal facility which was "the sole means by which customers may travel from the parking lot to the post office building. … [It] lies entirely on Postal Service property. … The sidewalk belongs to the post office and is used for no other purpose").  Even more clearly than the sidewalk at issue in Kokinda, the Property on which plaintiff solicited "lies entirely on Postal Service property" and "is used for no other purpose" than to conduct postal business, and, therefore, is subject to 39 CFR 232.1(h)(1).  As such, plaintiff was violating federal law when he attempted to solicit on the Property, and Lincoln, as a matter of law, violated no right of plaintiff by ordering him to leave the Property.

Moreover, the record shows that plaintiff was trespassing, and was subject to arrest, at the time of his encounter with Lincoln, and Lincoln was justified in ordering plaintiff to leave the Property for this additional reason.

Specifically, G.L. c. 266, §120 provides, in relevant part:

> Whoever, without right . . . remains in or upon the . . . buildings . . . of another . . . after having been forbidden so to do by the person who has lawful control of said premises . . . shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment. . . . A person who is found committing such trespass may be arrested by a . . . police officer . . .[3]

This statute applies to public buildings, see Com. v. Egleson, 355 Mass. 259, 262, 244 N.E.2d 589, 592 (1969) (affirming trespass conviction of individual who entered municipal building to counsel pre-inductees as to their rights in relation to military draft, and refused to leave upon request by building custodian), as well as places of public accommodation.  See Com. v. Lapon, 28 Mass.App.Ct. 681, 683-684, 554 N.E.2d 1225, 1227 (1990) (affirming conviction of shopper who refused to leave supermarket upon request by store manager); Gutierrez v. Massachusetts Bay Transportation Authority, 437 Mass. 396, 411, 772 N.E.2d 552, 565 (2002) (instructing that

---

[3] A copy of G.L. c. 266, §120 is attached hereto for the Court's convenience.

refusal to leave train station may be a criminal trespass). Thus, even where there is a right to enter onto property – such as a post office – an individual "ha[s] no right to remain after those with lawful control of the property ask [him] to leave." Com. v. Hood, 389 Mass. 581, 590, 452 N.E.2d 188, 194 (1983) (holding that even if defendants had implied license to enter laboratory and pass out leaflets, license lasted only until laboratory's security officer asked them to leave); Lapon, 28 Mass.App.Ct. at 684, 554 N.E.2d at 1227 (defendant shopper had no right to remain at supermarket once he was asked to leave).

In this case, plaintiff admits that a Postal Service employee informed him that he was not permitted to solicit on the Property, and requested that he leave the Property. Complaint, ¶¶5, 7-8. Plaintiff also admits that he refused this request, and thus cannot dispute that he was committing the crime of trespass, and was subject to arrest, pursuant to G.L. c. 266, §120. As plaintiff was subject to arrest, Lincoln, as a matter of law, violated no right of plaintiff by simply ordering him to leave the Property. Cf. Brisson v. City of New Bedford, 2005 WL 2862227, (D.Mass., Oct 31, 2005, Woodlock, J.) (entering summary judgment for defendant police officer in civil rights action based on arrest of plaintiff who refused to leave police station at officer's request).[4]

As plaintiff was both violating federal law and trespassing when Lincoln ordered him to leave the Property, Lincoln's conduct violated no statutory, constitutional, or common-law right of plaintiff, as a matter of law. As plaintiff cannot establish that Lincoln acted unlawfully when he ordered plaintiff to leave the Property, plaintiff cannot establish liability against the Town on any theory. See, e.g, Wilson v. Town of Mendon, 294 F.3d 1, 6 (2002) (there can be no constitutional claim against a municipality if its employee has inflicted no constitutional harm);

---

[4] As Lincoln had the right to arrest plaintiff for the crime of trespassing, any contention that Lincoln did not have authority to enforce 39 CFR 232.1(h)(1), discussed above, is irrelevant.

see also G.L. c.258, §2 (providing for liability against a public employer based on its employee's negligent conduct). Therefore, judgment should enter for the Town on plaintiff's claims, and the Complaint should be dismissed.

      B.      Plaintiff Cannot Establish a Claim Under Any of the Referenced Constitutional or Statutory Provisions

In addition to the fact that Lincoln's conduct was lawful for the reasons explained above, the Complaint should be dismissed because plaintiff cannot prove a violation of any of the constitutional or statutory provisions specified in the Complaint, as explained below.

**Count 1**

Plaintiff's claim under G.L. c.12, §11H-I, the Massachusetts Civil Rights Act (Count 1), fails because it is well-established that a municipality is immune from liability for such a claim. See Kelley v. LaForce, 288 F.3d 1, 11 n.9 (1st Cir.2002).

**Counts 2 through 8**

Counts 2 through 8 assert that Lincoln violated Articles V, VIII, IX and XIX of the Massachusetts Declaration of Rights, and state laws G.L. c.56, §11, G.L. c.41, §98D, and G.L. c.265, §37.[5] As an initial matter, the claims set forth in Counts 2 through 8 fail because plaintiff cannot show that a private right of action exists under any of the enumerated constitutional or statutory provisions.

---

[5] The referenced laws and constitutional provisions provide, in relevant part, as follows:
    Art. V: the "officers of government … are at all times accountable to [the people];"
    Art. VIII: "the people have a right … to cause their public officers to return to private life;"
    Art. IX "all the inhabitants of this commonwealth … have an equal right to elect officers;"
    Art. XIX "[t]he people have a right … to assemble to consult upon the common good;"
    G.L. c.56, §11 prohibits the forging, altering or destruction of nomination papers;
    G.L. c.265, §37 prohibits interference with the exercise of any legal right "by force or threat of force;"
    G.L. c.41, §98D provides that every municipal police officer shall carry an identification card which "shall be exhibited upon lawful requests."

6

Moreover, plaintiff fails to establish a claim under any of the laws enumerated in Counts 2 through 8, because Lincoln's conduct – as alleged by plaintiff – simply did not, as a matter of law, violate any of these laws.  Specifically, Lincoln's conduct did not violate plaintiff's right to (1) participate in elections, as guaranteed by Articles VIII and IX of the Declaration of Rights, see Opinion of the Justices, 359 Mass. 775, 776-77, 268 N.E.2d 159 (1971); McSweeney v. City of Cambridge, 422 Mass. 648, 650, 665 N.E.2d 11 (1996), (2) assemble to consult upon the common good (Art. XIX); or (3) hold his elected officials accountable (Art. V).

Nor did Lincoln's conduct violate G.L. c.56, §11 (prohibiting the "forging, altering or destruction of nomination papers") or G.L. c.265, §37 (prohibiting interference with the exercise of any legal right "by force or threat of force").  Finally, Lincoln's conduct did not violate G.L. c.41, §98D, which provides that a police officer must, upon request, show an identification card bearing his photograph and the municipal seal, since plaintiff did not request Lincoln to display his identification card, but simply noted that Lincoln's uniform did not bear a name tag or badge. Complaint, ¶22.  Police officers are not required to wear name tags.  See G.L. c.41, §98C.  As such, plaintiff has failed to allege facts to sustain an action under any of the laws specified in Counts 2 through 8 of the Complaint, if a cause of action under any of these provisions even exists.

**Counts 9-10**

Finally, plaintiff's claims against the Town for vicarious negligence and negligent hiring, supervision, and training (Counts 9-10) should also be dismissed due to lack of sufficient presentment, which is a condition precedent to bringing suit against a municipality under G.L. c.258, the Massachusetts Tort Claims Act.  See G.L.c. 258, §4; Krasnow v. Allen, 29

Mass.App.Ct. 562, 566, 562 N.E.2d 1375 (1990).[6]  The presentment requirement includes both procedural and substantive prerequisites, in that the letter must be timely submitted to the correct party, and must contain adequate notification of a claim, so that the responsible public official "can investigate to determine whether or not a claim is valid, preclude payment of inflated or nonmeritorious claims, settle valid claims expeditiously, and take steps to ensure that similar claims will not be brought in the future."  Rodriguez v. Cambridge Housing Authority**,** 59 Mass.App.Ct. 127, 134, 795 N.E.2d 1 (2003).  "The presentment letter should be 'precise' in identifying the basis of the claim; it cannot be so obscure that educated public officials should find themselves baffled or misled with respect to the claim asserted."  Id., 59 Mass.App.Ct at 134, 795 N.E.2d 1.

　　　In this case, plaintiff's presentment letter did not fairly notify Town officials of the bases for liability asserted in his Complaint, because the letter contains no reference whatsoever to any alleged negligence, either by Lincoln or the Town.  Statement, ¶14.  Instead, the letter simply asserts violations of the state and federal constitutions, the state statutes cited above, and "breach of contract."  Id.  As such, the letter "cannot fairly be read as stating claims for negligent" torts.  Tambolleo v. Town of West Boylston, 34 Mass.App.Ct. 526, 533, 613 N.E.2d 127 (1993) (holding that presentment letters which asserted intentional torts by a police officer were insufficient to permit plaintiffs to proceed against the Town for negligent supervision and emotional distress, since "the sole claim made in the plaintiffs' letters was one barred by" the Tort Claims Act).  Here, the presentment letter would not prompt the Town to investigate plaintiff's claims for any purpose contemplated under the Tort Claims Act.  Id.  "Failure to

---

[6]Specifically, G.L. c. 258, §4 provides in pertinent part:  "[a] civil action shall not be instituted against a public employer on a claim for damages under this chapter unless [a] claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose."

comply with the presentment requirement is fatal." Tivnan v. Registry of Motor Vehicles, 50 Mass.App.Ct. 96, 103, 734 N.E.2d 1182 (2000).  Therefore, plaintiff's claims against the Town should be dismissed for this additional reason.

V.      CONCLUSION

      WHEREFORE, the defendant Town of Bridgewater requests that this Court enter summary judgment in its favor and dismiss the Complaint in its entirety.

DEFENDANT,

TOWN OF BRIDGEWATER,

By its attorneys,

/s/Jackie Cowin
Joseph L. Tehan, Jr. (BBO # 494020)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
101 Arch Street
Boston, MA  02110
617-556-0007

263578/METG/0620

CERTIFICATE OF SERVICE

I, Jackie Cowin, certify that the above document has been or will be served upon any party or counsel of record who is not a registered participant of the Court's ECF system. /s/Jackie Cowin

Home Page > Executive Branch > Code of Federal Regulations > Electronic Code of Federal Regulations

# Electronic Code of Federal Regulations (e-CFR)

## BETA TEST SITE

## e-CFR Data is current as of October 11, 2005

**Title 39: Postal Service**

Browse Previous | Browse Next

**PART 232—CONDUCT ON POSTAL PROPERTY**

---

**Section Contents**
§ 232.1   Conduct on postal property.

---

**Authority:**   18 U.S.C. 13, 3061; 21 U.S.C. 802, 844; 39 U.S.C. 401, 403(b)(3), 404(a)(7); 40 U.S.C. 318, 318a, 318b, 318c; Pub. L. 104–208, 110 Stat. 1060.

**§ 232.1   Conduct on postal property.**

 top

(a) *Applicability.* This section applies to all real property under the charge and control of the Postal Service, to all tenant agencies, and to all persons entering in or on such property. This section shall be posted and kept posted at a conspicuous place on all such property.

(b) *Inspection, recording presence.* (1) Purses, briefcases, and other containers brought into, while on, or being removed from the property are subject to inspection. However, items brought directly to a postal facility's customer mailing acceptance area and deposited in the mail are not subject to inspection, except as provided by section 274 of the Administrative Support Manual. A person arrested for violation of this section may be searched incident to that arrest.

(2) Vehicles and their contents brought into, while on, or being removed from restricted nonpublic areas are subject to inspection. A prominently displayed sign shall advise in advance that vehicles and their contents are subject to inspection when entering the restricted nonpublic area, while in the confines of the area, or when leaving the area. Persons entering these areas who object and refuse to consent to the inspection of the vehicle, its contents, or both, may be denied entry; after entering the area without objection, consent shall be implied. A full search of a person and any vehicle driven or occupied by the person may accompany an arrest.

(3) Except as otherwise ordered, properties must be closed to the public after normal business hours. Properties also may be closed to the public in emergency situations and at such other times as may be necessary for the orderly conduct of business. Admission to properties during periods when such properties are closed to the public may be limited to authorized individuals who may be required to sign the register and display identification documents when requested by security force personnel or other authorized individuals.

(c) *Preservation of property.* Improperly disposing of rubbish, spitting, creating any hazard to persons or things, throwing articles of any kind from a building, climbing upon the roof or any part of a building, or willfully destroying, damaging, or removing any property or any part thereof, is prohibited.

(d) *Conformity with signs and directions.* All persons in and on property shall comply with official signs of a prohibitory or directory nature, and with the directions of security force personnel or other authorized individuals.

(e) *Disturbances.* Disorderly conduct, or conduct which creates loud and unusual noise, or which obstructs the usual use of entrances, foyers, corridors, offices, elevators, stairways, and parking lots, or which otherwise tends to impede or disturb the public employees in the performance of their duties, or which otherwise impedes or disturbs the general public in transacting business or obtaining the services provided on property, is prohibited.

(f) *Gambling.* Participating in games for money or other personal property, the operation of gambling devices, the conduct of a lottery or pool, or the selling or purchasing of lottery tickets, is prohibited on postal premises. This prohibition does not apply to the vending or exchange of State Lottery tickets at vending facilities operated by licensed blind persons where such lotteries are authorized by state law. (See Domestic Mail Manual 123.351 and 123.42; Administrative Support Manual 221.42; Regional Instructions, Part 782, section IV G 2c.)

(g) *Alcoholic beverages, drugs, and smoking.* (1) A person under the influence of an alcoholic beverage or any drug that has been defined as a "controlled substance" may not enter postal property or operate a motor vehicle on postal property. The possession, sale, or use of any "controlled substance" (except when permitted by law) or the sale or use of any alcoholic beverage (except as authorized by the Postmaster General or designee) on postal premises is prohibited. The term "controlled substance" is defined in section 802 of title 21 U.S.C.

(2) Smoking (defined as having a lighted cigar, cigarette, pipe, or other smoking material) is prohibited in all postal buildings and office space, including public lobbies.

(h) *Soliciting, electioneering, collecting debts, vending, and advertising.* (1) Soliciting alms and contributions, campaigning for election to any public office, collecting private debts, soliciting and vending for commercial purposes (including, but not limited to, the vending of newspapers and other publications), displaying or distributing commercial advertising, soliciting signatures on petitions, polls, or surveys (except as otherwise authorized by Postal Service regulations), and impeding ingress to or egress from post offices are prohibited. These prohibitions do not apply to:

(i) Commercial or nonprofit activities performed under contract with the Postal Service or pursuant to the provisions of the Randolph-Sheppard Act;

(ii) Posting notices on bulletin boards as authorized in §243.2(a) of this chapter;

(iii) The solicitation of Postal Service and other Federal military and civilian personnel for contributions by recognized agencies as authorized by the Manual on Fund Raising Within the Federal Service, issued by the Chairman of the U.S. Civil Service Commission under Executive Order 10927 of March 13, 1961.

(2) Solicitations and other actions which are prohibited by paragraph (h)(1) of this section when conducted on Postal Service property should not be directed by mail or telephone to postal employees on Postal Service property. The Postal Service will not accept or distribute mail or accept telephone calls directed to its employees which are believed to be contrary to paragraph (h)(1) of this section.

(3) Leafleting, distributing literature, picketing, and demonstrating by members of the public are prohibited in lobbies and other interior areas of postal buildings open to the public. Public assembly and public address, except when conducted or sponsored by the Postal Service, are also prohibited in lobbies and other interior areas of postal building open to the public.

(4) *Voter registration.* Voter registration may be conducted on postal premises only with the approval of the postmaster or installation head provided that all of the following conditions are met:

(i) The registration must be conducted by government agencies or nonprofit civic leagues or organizations that operate for the promotion of social welfare but do not participate or intervene in any political campaign on behalf of any candidate or political party for any public office.

(ii) Absolutely no partisan or political literature may be available, displayed, or distributed. This includes photographs, cartoons, and other likenesses of elected officials and candidates for public office.

(iii) The registration is permitted only in those areas of the postal premises regularly open to the public.

(iv) The registration must not interfere with the conduct of postal business, postal customers, or postal operations.

(v) The organization conducting the voter registration must provide and be responsible for any equipment and supplies.

(vi) Contributions may not be solicited.

(vii) Access to the workroom floor is prohibited.

(viii) The registration activities are limited to an appropriate period before an election.

(5) Except as part of postal activities or activities associated with those permitted under paragraph (h)(4) of this section, no tables, chairs, freestanding signs or posters, structures, or furniture of any type may be placed in postal lobbies or on postal walkways, steps, plazas, lawns or landscaped areas, driveways, parking lots, or other exterior spaces.

(i) *Photographs for news, advertising, or commercial purposes.* Except as prohibited by official signs or the directions of security force personnel or other authorized personnel, or a Federal court order or rule, photographs for news purposes may be taken in entrances, lobbies, foyers, corridors, or auditoriums when used for public meetings. Other photographs may be taken only with the permission of the local postmaster or installation head.

(j) *Dogs and other animals.* Dogs and other animals, except those used to assist persons with disabilities, must not be brought upon postal property for other than official purposes.

(k) *Vehicular and pedestrian traffic.* (1) Drivers of all vehicles in or on property shall be in possession of a current and valid state or territory issued driver's license and vehicle registration, and the vehicle shall display all current and valid tags and licenses required by the jurisdiction in which it is registered.

(2) Drivers who have had their privilege or license to drive suspended or revoked by any state or territory shall not drive any vehicle in or on property during such period of suspension or revocation.

(3) Drivers of all vehicles in or on property shall drive in a careful and safe manner at all times and shall comply with the signals and directions of security force personnel, other authorized individuals, and all posted traffic signs.

(4) The blocking of entrances, driveways, walks, loading platforms, or fire hydrants in or on property is prohibited.

(5) Parking without authority, parking in unauthorized locations or in locations reserved for other persons, or continuously in excess of 18 hours without permission, or contrary to the direction of posted signs is prohibited. This section may be supplemented by the postmaster or installation head from time to time by the issuance and posting of specific traffic directives as may be required. When so issued and posted such directives shall have the same force and effect as if made a part hereof.

(l) *Weapons and explosives.* No person while on postal property may carry firearms, other dangerous or deadly weapons, or explosives, either openly or concealed, or store the same on postal property, except for official purposes.

(m) *Nondiscrimination.* There must be no discrimination by segregation or otherwise against any person or persons because of race, color, religion, national origin, sex, age (persons 40 years of age or older are protected), reprisal (discrimination against a person for having filed or for having participated in the processing of an EEO complaint—29 CFR 1613.261–262), or physical or mental handicap, in furnishing, or by refusing to furnish to such person or persons the use of any facility of a public nature, including all

services, privileges, accommodations, and activities provided on postal property.

(n) *Conduct with regard to meetings of the Board of Governors.* (1) Without the permission of the chairman no person may participate in, film, televise, or broadcast any portion of any meeting of the Board or any subdivision or committee of the Board. Any person may electronically record or photograph a meeting, as long as that action does not tend to impede or disturb the members of the Board in the performance of their duties, or members of the public while attempting to attend or observe a meeting.

(2) Disorderly conduct, or conduct which creates loud or unusual noise, obstructs the ordinary use of entrances, foyers, corridors, offices, meeting rooms, elevators, stairways, or parking lots, or otherwise tends to impede or disturb the members of the Board in the performance of their duties, or members of the public while attempting to attend or observe a meeting of the Board or of any subdivision, or committee of the Board, is prohibited.

(3) Any person who violates paragraph (n) (1) or (2) of this section may, in addition to being subject to the penalties prescribed in paragraph (p) of this section, be removed from and barred from reentering postal property during the meeting with respect to which the violation occurred.

(4) A copy of the rules of this section governing conduct on postal property, including the rules of this paragraph appropriately highlighted, shall be posted in prominent locations at the public entrances to postal property and outside the meeting room at any meeting of the Board of Governors or of any subdivision or committee of the Board.

(o) *Depositing literature.* Depositing or posting handbills, flyers, pamphlets, signs, poster, placards, or other literature, except official postal and other Governmental notices and announcements, on the grounds, walks, driveways, parking and maneuvering areas, exteriors of buildings and other structures, or on the floors, walls, stairs, racks, counters, desks, writing tables, window-ledges, or furnishings in interior public areas on postal premises, is prohibited. This prohibition does not apply to:

(1) Posting notices on bulletin boards as authorized in §243.2(a) of this chapter;

(2) Interior space assigned to tenants for their exclusive use;

(3) Posting of notices by U.S. Government-related organizations such as the Inaugural Committee as defined in 36 U.S.C. 721.

(p) *Penalties and other law.* (1) Alleged violations of these rules and regulations are heard, and the penalties prescribed herein are imposed, either in a Federal district court or by a Federal magistrate in accordance with applicable court rules. Questions regarding such rules should be directed to the regional counsel for the region involved.

(2) Whoever shall be found guilty of violating the rules and regulations in this section while on property under the charge and control of the Postal Service is subject to fine of not more than $50 or imprisonment of not more than 30 days, or both. Nothing contained in these rules and regulations shall be construed to abrogate any other Federal laws or regulations of any State and local laws and regulations applicable to any area in which the property is situated.

(q) *Enforcement.* (1) Members of the U.S. Postal Service security force shall exercise the powers of special policemen provided by 40 U.S.C. 318 and shall be responsible for enforcing the regulations in this section in a manner that will protect Postal Service property.

(2) Local postmasters and installation heads may, pursuant to 40 U.S.C. 318b and with the approval of the chief postal inspector or his designee, enter into agreements with State and local enforcement agencies to insure that these rules and regulations are enforced in a manner that will protect Postal Service property.

(3) Postal Inspectors, Office of Inspector General Criminal Investigators, and other persons designated by the Chief Postal Inspector may likewise enforce regulations in this section.

[37 FR 24346, Nov. 16, 1972, as amended at 38 FR 27824, Oct. 9, 1973; 41 FR 23955, June 14, 1976; 42 FR 17443, Apr. 1, 1977; 43 FR 38825, Aug. 31, 1978; 46 FR 898, Jan. 5, 1981. Redesignated and

amended at 46 FR 34330, July 1, 1981; 47 FR 32113, July 26, 1982; 53 FR 29460, Aug. 5, 1988; 54 FR 20527, May 12, 1989; 57 FR 36903, Aug. 17, 1993; 57 FR 38443, Aug. 25, 1992; 63 FR 34600, June 25, 1998]

Browse Previous | Browse Next

For questions or comments regarding e-CFR editorial content, features, or design, email ecfr@nara.gov.

For questions concerning e-CFR programming and delivery issues, email webteam@gpo.gov.

Last updated: July 27, 2005

M.G.L.A. 266 § 120

Massachusetts General Laws Annotated <u>Currentness</u>
   Part IV. Crimes, Punishments and Proceedings in Criminal Cases
     Title I. Crimes and Punishments
       <u>Chapter 266.</u> Crimes Against Property <u>(Refs & Annos)</u>

+++ CURRENT VERSION +++
VIEW ALL <u>VERSIONS</u>

➡ **§ 120. Entry upon private property after being forbidden as trespass; prima facie evidence; penalties; arrest; tenants or occupants excepted**

Whoever, without right enters or remains in or upon the dwelling house, buildings, boats or improved or enclosed land, wharf, or pier of another, or enters or remains in a school bus, as defined in <u>section 1 of chapter 90</u>, after having been forbidden so to do by the person who has lawful control of said premises, whether directly or by notice posted thereon, or in violation of a court order pursuant to section thirty-four B of chapter two hundred and eight or <u>section three</u> or <u>four</u> of chapter two hundred and nine A, shall be punished by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days or both such fine and imprisonment. Proof that a court has given notice of such a court order to the alleged offender shall be prima facie evidence that the notice requirement of this section has been met. A person who is found committing such trespass may be arrested by a sheriff, deputy sheriff, constable or police officer and kept in custody in a convenient place, not more than twenty-four hours, Sunday excepted, until a complaint can be made against him for the offence, and he be taken upon a warrant issued upon such complaint.

This section shall not apply to tenants or occupants of residential premises who, having rightfully entered said premises at the commencement of the tenancy or occupancy, remain therein after such tenancy or occupancy has been or is alleged to have been terminated. The owner or landlord of said premises may recover possession thereof only through appropriate civil proceedings.